IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEALTH ENHANCEMENT PRODUCTS, INC.,
a Nevada corporation,

       Plaintiff,

v

CEPTAZYME, LLC,
a limited liability company,
ZUS HEALTH, LLC, and
a Utah limited liability company,

       Defendants.

Case No. 12-cv-10948
Hon.: Avern Cohn
Magistrate Judge: Laurie J. Michelson

Removed from:
Oakland County Circuit Court
Case No. 12-124233-CK
Hon. James M. Alexander

_____/

EDWARD G. LENNON PLLC
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste, 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

MADDIN, HAUSER, WARTELL,
ROTH & Heller, P.C.
Brian A. Nettleingham (P58966)
Attorneys for Defendants
28400 Northwestern Hwy., 3rd Floor
Southfield, MI 48034
(248)354-4030
ban@maddinhauser.com

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1

## **TABLE OF CONTENTS**

Statement of Issues……………………………………………………………….ii

Controlling Authority……………………………………………………………….iii

Introduction……………………………………………………………….…………1

Statement of Facts………………………………………………………,,…………....1

      I.        The allegations in Plaintiff's complaint……………………………...1

      II.       The License Agreement between HEPI and Zus……………………1

      III.     Defendants' breach the License Agreement compels HEPI to file this suit to seek a declaration from the Court that the License Agreement is deemed terminated……………………………………………….2


Argument……………………………………………………………………………….3

      I.        Standard of review……………………………………………….…….3.

      II.       The Sixth Circuit has determined that the standard for conferring jurisdiction under due process and Michigan's long arm statute are the same……………………………………………………………….4

      III.     This Court's exercise of personal jurisdiction over these Defendants is consistent with Due Process considerations…………………….4

Conclusion…………………………………………………………………….…10

## **STATEMENT OF ISSUES**

1. This lawsuit concerns a License Agreement from Plaintiff that grants Defendants a <u>worldwide</u> license to market, sell and distribute Plaintiff's proprietary product according to certain terms and conditions. Defendants distributed that product in Michigan, and Defendants' representative appeared in Michigan on multiple occasions to attempt to resolve disputes concerning the License Agreement. Does this Court have personal jurisdiction over Defendants?


# **CONTROLLING AUTHORITY**

## **CASE LAW**

Air Prods. and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007)……………………………………………………………………………………3

Bagsby v. Gehres, 195 F.Supp.2d 957, 961 (E.D.Mich.2002)…………………..4

Bridgeport Music, Inc. v Still N the Water Pub, 327 F.3d 472, 477 (6th Cir. 2003)…………………………………………………………………..4

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)……………………5

Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1150 (6th Cir.1990)………….4

CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).....................3

Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 150 (6th Cir. 1997)…….5

LAK, Inc v Deer Creek Enterprises, 885 F2d 1293, 1301 (6th Cir 1989)…………7

Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996)……………………………………………………………………..………3

Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002)…3

Parish v Mertes, 84 Mich App 336, 339; 269 NW2d 591 (1978)

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)……….5

Salom Enter., LLC v. TS Trim Indus., Inc., 464 F. Supp. 2d 676, 684 (E.D. Mich. 2006)……………………………………………………………………………..5

Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989))…..4

Theunissen v. Matthews,.935 F.2d 1454, 1462 (6th Cir. 1991)……………………4

## **RULES OF PROCEDURE**

Fed. R. Civ. P 12(b)(2)..……………………………………………………………3

iii

## INTRODUCTION

In this lawsuit, Plaintiff seeks a declaratory judgment that a License Agreement between Plaintiff and one of the Defendants is deemed terminated. That License Agreement, which Defendants breached from its inception, granted Defendants a <u>worldwide</u> license to market, sell and distribute Plaintiff's proprietary product according to certain terms and conditions. Defendants distributed that product in Michigan, and Defendants' representative appeared in Michigan on multiple occasions to attempt to resolve disputes concerning the License Agreement. This Court has personal jurisdiction over these Defendants.

## STATEMENT OF FACTS

**I.   The allegations in Plaintiff's complaint.**

Plaintiff, Health Enhancement Products, Inc. ("HEPI"), is a Nevada corporation with headquarters located in Oakland County, Michigan. (Complaint, ¶ 1).[1] Defendant Ceptazyme, LLC ("Ceptazyme") is a limited liability company that conducts business in the State of Michigan. (¶ 2). Defendant Zus Health, LLC ("Zus") is a Utah limited liability company that conducts business in the State of Michigan. (¶ 3).

**II.   The License Agreement between HEPI and Zus.**

HEPI is the rightful owner of certain intellectual property and know-however relating to nutritional products known and trademarked as ProAlgaZyme ("the Product"). (¶ 6).   On September 2, 2010, HEPI and Zus entered into a

---

[1] Unless otherwise indicated, future paragraph citations refer to the Complaint in this matter.

license agreement. ("the Agreement", attached as Exhibit A). (¶ 8). Under the Agreement, HEPI granted to Zus a <u>worldwide</u> license to market, sell and distribute the Product according to certain terms and conditions.

The Agreement expressly provides that the Agreement may not be assigned without the written consent of HEPI. (Agreement, Section 11.12). Contrary to that provision, pursuant to an assignment that did not surface until this litigation was commenced, even though HEPI never consented to the assignment, Zus has purported to assign the Agreement to Ceptazyme. (See Exhibit A attached to Defendants' March 8, 2012 Motion to Dismiss).

### III. **Defendants' breach the License Agreement compels HEPI to file this suit to seek a declaration from the Court that the License Agreement is deemed terminated.**

Soon after the parties began operating under the Agreement, Defendants were in breach. HEPI records reveal that, by September, 2011, Defendants had failed to pay for Product that was shipped to Defendants' distributor. (Exhibit A, affidavit of Andrew Dahl, HEPI president, ¶ 8 ). Additionally, before this litigation was commenced, HEPI notified Defendants of additional breaches of the Agreement: (a) contrary to Section 7.1 and 7.7 of the Agreement, Ceptazyme failed to comply with applicable FDA regulations in connection with the promotion, distribution and use of the Product; and (b) contrary to Section 11.4 of the Agreement, Ceptazyme has failed to comply with other applicable laws, rules and regulations. (<u>Id</u>. at ¶ 10). HEPI has also learned that, contrary to Section 8.6 of the Agreement, Ceptazyme has failed to maintain certain product liability insurance. (<u>Id.</u>).

Defendants' breaches of the Agreement have occurred in Michigan and have placed HEPI in substantial peril. Accordingly, HEPI has sought a declaration from the Court that the Agreement is deemed terminated. Defendants removed this matter to this Court, and Defendants have filed a motion to dismiss, claiming that this Court does not have personal jurisdiction over Defendants. For the following reasons, Defendants' motion should be rejected.

## ARGUMENT

### I.      Standard of review.

Plaintiff has the burden of establishing this Court's personal jurisdiction over Defendants. Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996). Unless this Court conducts an evidentiary hearing on the issue of personal jurisdiction, Plaintiff "need only make a prima facie showing of jurisdiction." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Plaintiff can satisfy this burden by "establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation marks and citation omitted).

In reviewing a motion to dismiss brought pursuant to Rule 12(b)(2), the Court views the pleadings and affidavits in the light most favorable to Plaintiff. Air Prods. and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007). The Court "will not consider facts proffered by the defendant that conflict

3

with those offered by [the plaintiff]." Neogen, 282 F.3d at 887 (citing Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989)).

## II. The Sixth Circuit has determined that the standard for conferring jurisdiction under due process and Michigan's long arm statute are the same.

"In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment." Bagsby v. Gehres, 195 F.Supp.2d 957, 961 (E.D.Mich.2002) (citing Neogen Corp., 282 F.3d at 887-88). "[T]his Circuit historically has understood Michigan to intend its long-arm statute to extend to the boundaries of the fourteenth amendment." Theunissen v. Matthews,.935 F.2d 1454, 1462 (6th Cir. 1991). Thus, in order to determine whether this Court has jurisdiction over these Defendants, this Court need only perform one inquiry under the Due Process Clause. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1150 (6th Cir.1990); Bridgeport Music, Inc. v. Still N the Water Pub., 327 F.3d 472, 477 (6th Cir.2003).

## III. This Court's exercise of personal jurisdiction over these Defendants is consistent with Due Process considerations.

The Sixth Circuit has established that the Due Process determination entails a three-part inquiry: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise

4

of jurisdiction over the defendant reasonable.  Air Prods. and Controls, Inc., supra, p 550 (quoting S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).  Each of these parts is analyzed below.

    A.    Purposeful availment.

To be subject to personal jurisdiction, a defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 150 (6th Cir. 1997) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" Neogen, 282 F.3d at 889 (quoting Burger King, 471 U.S. at 475).  Purposeful availment is satisfied where "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." Air Prod. and Controls, 503 F.3d at 551 (quoting Burger King, 471 U.S. at 475) (emphasis in original).

A defendant's physical presence in the state is not required. Air Prod. and Controls, 503 F.3d at 551. As the Supreme Court explained in Burger King, "the purposeful availment requirement addresses the protection provided by the Due Process Clause of an individual's liberty interest in not being subjected to binding judgments of a foreign jurisdiction absent 'fair warning' that its activity may bring them within the authority of those courts." Salom Enter., LLC v. TS Trim Indus., Inc., 464 F. Supp. 2d 676, 684 (E.D. Mich. 2006) (citing Burger King, 471 U.S. at

5

471-72). "In the context of limited personal jurisdiction, this 'fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King, 471 U.S. at 472).

Under the Agreement, HEPI granted to Zus a worldwide license to market, sell and distribute the Product according to certain terms and conditions. Ceptazyme contends that Zus has properly assigned the Agreement to it (see Exhibit A attached to Defendants' March 8, 2012 Motion to Dismiss); thus, Ceptazyme also contends that it has a worldwide license to market, sell and distribute the Product. Defendants' contacts with Michigan have been consistent with this worldwide license, as Defendants have chosen to conduct business in Michigan in several ways.

Attached to this response as **Exhibit A** is an affidavit of HEPI's president, Andrew Dahl ("Dahl"). This affidavit establishes that Defendants have had regular, systematic contacts with Michigan: (1) it is believed that one of Defendants' sublicensees that receives, distributes and sells the Product in Michigan is David Bommarito ("Bommarito"), a resident of Oakland Township, Michigan, and an owner of one of the entity members of Ceptazyme (Exhibit A, ¶ 15). (2) it is believed that Defendants and their sublicensees are marketing the Product to customers throughout the United States, including customers in Michigan (Id. at ¶ 14); (3) Robinson met with Dahl in Michigan on April 29, 2011 and another occasion to resolve disputes concerning the Agreement (Id. at ¶13); and (4) Robinson met with then HEPI Board members John Gorman, Steve

6

Warner, and John Crissman at a meeting in Michigan that took place on September 22, 2011 (Id. at ¶ 12). Robinson concedes in his affidavit attached to Defendants' motion that he attended the meeting in Michigan that took place on September 22, 2011.

The quality, not the quantity, of the defendant's contacts with the forum state is to be viewed when determining whether the defendant purposely availed himself of the privilege of conducting activities in the forum state. LAK, Inc v Deer Creek Enterprises, 885 F2d 1293, 1301 (6th Cir 1989). A single transaction may be enough to confer jurisdiction. Parish v Mertes, 84 Mich App 336, 339; 269 NW2d 591 (1978). In this case, it cannot be disputed that Defendants purposely availed themselves of the benefits of Michigan's laws, and these Defendants' contacts with Michigan are much deeper that those that conferred personal jurisdiction in Burger King Corp, supra. In that case, the Supreme Court found that a Florida District Court had personal jurisdiction over a Michigan franchisee whose only contacts with Florida were his franchise agreement with the Florida corporation and communications to Florida via telephone calls and letters. Defendants' contacts with Michigan are much deeper and more frequent that the Defendants' contacts with Florida in Burger King.

### B. Plaintiff's Claims Arise from Defendants' Contacts with Michigan

As to the second prong of the Due Process determination, the Sixth Circuit has articulated the appropriate standard in various ways, i.e., "whether the causes of action were 'made possible by' or 'lie in the wake of the defendant's

7

contacts," or "whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." Air Prods. and Controls, 503 F.3d at 553 (internal quotation marks and citations omitted). The standard is a lenient one. Id.

Here, Defendants' breaches of the Agreement alleged by HEPI are "related to," and "connected with" Defendants contacts with Michigan. Specifically, HEPI contends that Defendants have breached the Agreement in the following ways: (1) contrary to Section 7.1 and 7.7 of the Agreement, Defendants failed to comply with applicable FDA regulations in connection with the promotion, distribution and use of the Product; (2) contrary to Section 11.4 of the Agreement, Defendants has failed to comply with other applicable laws, rules and regulations; and (3) contrary to Section 8.6 of the Agreement, Defendants has failed to maintain certain product liability insurance. (Id. at ¶ 10). Stated another way, HEPI alleges that Defendants breach the Agreement in Michigan every time they promote or distribute the Product in Michigan.

HEPI has alleged that the parties have met in Michigan on multiple occasions to resolve disputes concerning the Agreement, and Ceptazyme has directed at least one written communication to HEPI in Michigan. (**Exhibit B**). Those alone satisfy the second prong of the Due Process analysis. Serras, 875 F.2d at 1218 (finding allegations of fraudulent misrepresentations in phone calls and a Michigan visit sufficient to satisfy this second prong).

8

### C. <u>Exercise of limited personal jurisdiction over Defendants is reasonable.</u>

As to the third prong of the Due Process determination, the Court considers whether "the acts of the defendant or consequences caused by defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." <u>Air Prods. and Controls</u>, 503 F.3d at 554 (internal quotation marks and citation omitted). It is well-established that, "where, as here, the first two criterion are met, an inference of reasonableness arises and only the unusual case will not meet this third criteria." <u>Id.</u> (internal quotation marks and citations omitted). Factors considered by the Court in determining the reasonableness inquiry include:

(1) the burden on the defendant;

(2) the interest of the forum state;

(3) the plaintiff's interest in obtaining relief; and

(4) other states' interest in securing the most efficient resolution of the policy.

<u>Id.</u> at 554-55.

There exist no facts which suggest that this matter is an "unusual case", rebutting the inference that the exercise of jurisdiction over Defendants by this Court is reasonable. This lawsuit concerns an Agreement that granted Zus (and, according to Plaintiffs, Ceptazyme) a <u>worldwide</u> license to market, sell and distribute the Product. It is believed that Defendants are distributing this Product in Michigan, and, in doing so, HEPI alleges that Defendants are breaching the Agreement in Michigan. Defendants' representative has appeared in Michigan

on multiple occasions to resolve disputes concerning the Agreement. When those disputes could not be resolved, HEPI initiated this suit in Michigan. This Court's exercise of jurisdiction over Defendants is reasonable.

## CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion to dismiss.

>Respectfully submitted,
>
>EDWARD G. LENNON PLLC
>
>  s/Edward G. Lennon
>EDWARD G. LENNON (P42278)
>Attorney for Plaintiff
>355 S. Old Woodward, Ste 100
>Birmingham, MI 48009
>(248) 723-1276
>elennon@lennonlawpllc.com

Dated: March 29, 2012

**Proof of Service**

I certify that on the 29th day of March, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record herein at their respective addresses as disclosed on the pleadings, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:_____.

Signature: /s/Edward G. Lennon_____
    Edward G. Lennon
    355 S. Old Woodward, Ste 100
    Birmingham, MI 48009
    (248) 723-1276
    elennon@lennonlawpllc.com